# EXHIBIT A

## <u>INDEX OF STATE COURT DOCUMENTS</u>

Cause No. 121454-CV

**Jason Stell v JP Morgan Mortgage Acquisition Corp.,**

239th Judicial District of Brazoria County, Texas

| 1. | 03/09/2023 | Docket |
| 2. | 02/02/2023 | Plaintiff's Original Petition, Application for TRO and Temporary Injunction with Exhibits |
| 3. | 02/06/2023 | Certificate Cash Bond, Signed TRO Order, Citation |
| 4. | 02/08/2023 | Motion and Proposed Order |
| 5. | 02/22/2023 | Judicial Docket Entry, Service Returned |
| 6. | 02/23/2023 | Order |
| 7. | 03/06/2023 | Answer |
| 8. | 03/13/2023 | Injunction Hearing |

Case 3:23-cv-00080 Document 1-1 Filed 03/13/23 in TXSD Page 3 of 60

Skip to Main Content Logout My Account Search Menu New Civil Search Refine Search Back      Location : All Courts   Help

# REGISTER OF ACTIONS
## CASE NO. 121454-CV

| Jason Stell v. J.P. Morgan Mortgage Acquisition Corp. | § § § § § | Case Type: | **Contract - Foreclosure** |
|---|---|---|---|
| | | Date Filed: | **02/02/2023** |
| | | Location: | **239th District Court** |

---

### PARTY INFORMATION

| | | | **Attorneys** |
|---|---|---|---|
| **Defendant** | **J.P. Morgan Mortgage Acquisition Corp.** | | **Melissa S. Gutierrez** |
| | | | *Retained* |
| | | | 713-576-0300(W) |
| | | | |
| **Plaintiff** | **Stell, Jason** | | **Robert C. Vilt** |
| | | | *Retained* |
| | | | 713-840-7570(W) |

---

### EVENTS & ORDERS OF THE COURT

| | **OTHER EVENTS AND HEARINGS** | | |
|---|---|---|---|
| 02/02/2023 | **Original Petition (1-10 Plaintiffs) (OCA)** | | |
| 02/02/2023 | **Request** | | |
| 02/02/2023 | **Proposed** | | |
| 02/06/2023 | **Judicial Docket Entry** | | |
| 02/06/2023 | **Temporary Restraining Order Civil (OCA)** | | |
| 02/06/2023 | **Certificate** | | |
| 02/06/2023 | **Citation/TRO** | | |
| | J.P. Morgan Mortgage Acquisition Corp. | Served | 02/13/2023 |
| | | Anticipated Method | Certified Mail |
| 02/08/2023 | **Motion** | | |
| 02/08/2023 | **Proposed** | | |
| 02/22/2023 | **Judicial Docket Entry** | | |
| 02/22/2023 | **Green Card Returned** | | |
| 02/23/2023 | **Order** | | |
| 03/06/2023 | **Answer** | | |
| 03/13/2023 | **Injunction Hearing** (9:00 AM) (Judicial Officer Hill, Greg) | | |

Filed for Record
2/22/2023 4:09 PM
Cassandra C. Tigner, District Clerk
Brazoria County, Texas
121454-CV
Alyssa Cook, Deputy

CAUSE NO. ___121454-CV___

| | | |
|---|---|---|
| JASON STELL | § | IN THE DISTRICT COURT OF |
| | § | |
| v. | § | BRAZORIA COUNTY, TEXAS |
| | § | |
| J.P. MORGAN MORTGAGE | § | |
| ACQUISITION CORP. | § | _____ JUDICIAL DISTRICT |

## PLAINTIFF'S ORIGINAL PETITION, APPLICATION FOR INJUNCTIVE RELIEF, AND REQUEST FOR DISCLOSURES

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Jason Stell, Plaintiff herein, filing this his Original Petition, Application for Injunctive Relief, and Request for Disclosures complaining of J.P. Morgan Mortgage Acquisition Corp., Defendant herein, and for causes of action would respectfully show the Court as follows:

### DISCOVERY

1.      Plaintiff intends to conduct discovery under Texas Rules of Civil Procedure 190.3 (Level 2).

### PARTIES

2.      Jason Stell is an individual who resides in Brazoria County, Texas and may be served with process on the undersigned legal counsel.

3.      J.P. Morgan Mortgage Acquisition Corp. is an entity formed under the laws of the State of Delaware which conducts business in Brazoria County, Texas and may be served with process via its Registered Agent as follows:

> J.P. Morgan Mortgage Acquisition Corp.
> c/o C T Corporation System
> 1999 Bryan St., Ste. 900
> Dallas, TX 75201

POOR ORIGINAL

Copy from re:SearchTX

## JURISDICTION AND VENUE

4.     The Court has jurisdiction over J.P. Morgan Mortgage Acquisition Corp. because the Defendant is an entity formed under the laws of the State of Delaware which conducts business in Brazoria County, Texas.

5.     The Court has jurisdiction over the controversy because the damages are within the jurisdictional limits of the Court. Venue is mandatory in Brazoria County, Texas because the subject matter of this lawsuit involves real property which is located in Brazoria County, Texas. Further, all or a substantial part of the events or omissions giving rise to Plaintiff's causes of action occurred in Brazoria County, Texas thus venue is proper under §15.002(a)(1) of the Texas Civil Practice and Remedies Code.

## RELEVANT FACTS

6.     The subject matter of this lawsuit is the real property and the improvements thereon located at 1867 Garnet Breeze Drive, Rosharon, Texas 77583 (the "Property").

7.     Jason Stell ("Plaintiff") purchased the Property on or about October 29, 2014. During the process of purchasing the Property, Plaintiff executed a Promissory Note ("Note") in the amount of $183,571.00 as well as a Deed of Trust in which Guild Mortgage Company, is listed as the Lender. A true and correct copy of the Deed of Trust is attached hereto as Exhibit "1" and incorporated herein for all purposes.

8.     Upon information and belief, the Note and Deed of Trust were subsequently transferred to J.P. Mortgage Acquisition Corp. ("JPM" or "Defendant") for which Carrington Mortgage Services, LLC ("Carrington") acts as the loan servicer.

Copy from re:SearchTX

9.      Plaintiff entered into a Loan Modification Agreement (Deed of Trust) with Carrington Mortgage Services, LLC as the Servicer and Authorized Agent of J.P. Morgan Mortgage Acquisition Corp on July 19, 2018 for a new principal balance of $174,873.91 with an interest rate of 4.3750%. A true and correct copy of the Loan Modification Agreement (Deed of Trust) is attached hereto as Exhibit "2" and incorporated herein for all purposes.

10.     As Plaintiff was starting to face financial difficulties due to the COVID-19 pandemic, he contacted JPM to pursue loss mitigation options on March 1, 2020 - JPM granted him a Covid-19 Forbearance and promised him that the loan would be restructures once the forbearance expired. After the forbearance ended, Plaintiff contacted JPM to see when his payment was going to resume. JPM then informed him that he was placed in a streamlined loan modification process but then he heard nothing back. Plaintiff was given the option to take a loan from Carrington but rejected it as it was not a loan modification. Plaintiff submitted another application but Carrington kept requesting more information. Even though Plaintiff has the money to pay the monthly mortgage payments he kept getting denied in defiance of JPM's promise to restructure the loan.

11.     Instead of following proper procedure pursuant to the Texas Property Code as well as the related Deed of Trust, Defendant failed to send proper notices. Instead, Defendant violated Plaintiff's due process rights by simply posting the Property for foreclosure sale. Additionally, the foreclosure scheduled to be conducted by Defendant should be void as a matter of law because Defendant did not provide Plaintiff with the statutory notices pursuant to Section 15 of the Deed of Trust. Defendant's failure to provide Plaintiff with the statutory notices deprives Plaintiff of his due process rights and the opportunity to cure pursuant to Sections 19 and 22 of the Deed of Trust.

Copy from re:SearchTX

12.    Accordingly, Plaintiff alleges that Defendant is about to wrongfully sell his Property at a foreclosure sale on February 7, 2023 without providing the required notices and in violation of Plaintiff's due process rights. A true and correct copy of Notice of Substitute Trustee's Sale, which was provided to Plaintiff by the undersigned legal counsel, is attached hereto as Exhibit "3" and incorporated herein for all purposes.

### FIRST CAUSE OF ACTION: <u>DECLARATORY JUDGMENT</u>

13.    To the extent not inconsistent herewith, Plaintiff incorporates by reference the allegations made in paragraphs 1 through 12 as if set forth fully herein.

14.    Plaintiff seeks a determination of the rights of the parties pursuant to Tex. Civ. Prac. & Rem. Code Ann. § 37.001, *et seq*. (West).  In particular, Plaintiff seeks a determination that the pending foreclosure sale of his Real Property is wrongful because Defendant failed to properly follow the procedures as set forth in the Deed of Trust, the Texas Property Code as well as the Texas Constitution.  Specifically, the Defendant failed to provide proper notice and opportunity to cure pursuant to Texas Property Code 51.002.

15.    Further, Plaintiff seeks a determination that the pending foreclosure sale of his Real Property is wrongful because Defendant was precluded from taking any action whatsoever to foreclose on Plaintiff's Property without first complying with the Texas Property Code.

16.    Section 51.002 of the Texas Property Code governs the sale of real property under deeds of trust or other contract liens. Tex. Prop. Code Ann. § 51.002 (West); <u>Holy Cross Church of God in Christ v. Wolf</u>, 44 S.W.3d 562, 569 (Tex. 2001).  In particular, section 51.002(d) provides that "[n]otwithstanding any agreement to the contrary, the mortgage servicer ... shall serve a debtor in default ... with written notice by certified mail stating that the debtor is in default ... and giving the debtor at least 20 days to cure the default before notice of the sale can be given." *Id*. § 51.002(d).

Copy from re:SearchTX

Section 51.002(b) states that notice of sale, in turn, must be given at least twenty-one days before the date of the sale and specifies various locations where the notice must be made available. *Id*. §§ 51.002(b)(1)-(3). In addition to the minimum statutory requirements, the deed of trust executed by the debtor-mortgagor usually details the agreed contractual terms and conditions for foreclosure of real property.

**SECOND CAUSE OF ACTION:**
**<u>BREACH OF CONTRACT</u>**

17.    To the extent not inconsistent herewith, Plaintiff incorporates by reference the allegations made in paragraphs 1 through 16 as if set forth fully herein.

18.    The actions committed by Defendant constitutes breach of contract because:

A.    There exists a valid, enforceable contract between Plaintiff and Defendant;

B.    Plaintiff has standing to sue for breach of contract;

C.    Plaintiff performed his contractual obligations under the Deed of Trust;

D.    Defendant breached the parties' agreement by violating Section 15 of the Deed of Trust by failing to send all required foreclosure notices to Plaintiff at the proper address, as well as violating Sections 19 and 22 by refusing to give Plaintiff the opportunity to cure the default that Plaintiff had fraudulently been induced to creating; and

E.    The breaches of contract by Defendant caused Plaintiff's injury – actual damages which include, but are not limited to, loss of alternative loss mitigation options, violating Plaintiff's due process rights, litigation cost, interest on the balance of unpaid mortgage payments since the filing of this lawsuit, and damage to Plaintiff's credit.

Copy from re:SearchTX

## THIRD CAUSE OF ACTION:
### VIOLATION OF TEXAS PROPERTY CODE §51

19.    To the extent not inconsistent herewith, Plaintiff incorporates by reference the allegations made in paragraphs 1 through 18 as if set forth fully herein.

20.    Pursuant to the provisions of the Texas Property Code, the holder of a note must ordinarily give notice to the maker of the holder's intent to accelerate the time for payment as well as notice of acceleration. If the mortgagee intends to accelerate the maturity of the debt, the notice must unequivocally inform the mortgagor of the mortgagee's intention. A proper notice of default must give the borrower notice that the alleged delinquency must be cured; otherwise, the loan will be accelerated, and the property will go to foreclosure. Prior to a foreclosure action, the noteholder is also required to give the homeowners clear and unequivocal acceleration notice. Effective acceleration requires two acts: notice of intent to accelerate and notice of acceleration.

21.    The actions committed by Defendant constitutes violations of the Texas Property Code §51 because Defendant never sent proper and timely notice of default, the opportunity to cure the default, notice of intent to accelerate the debt, notice of acceleration, and notice of foreclosure sale which are required in order for Defendant to foreclose on its lien rights to the Property.

## FOURTH CAUSE OF ACTION:
### PROMISSORY ESTOPPEL

22.    To the extent not inconsistent herewith, Plaintiff incorporates by reference the allegations made in paragraphs 1 through 21 as if set forth fully herein.

23.    The actions committed by Defendant constitute promissory estoppel because:

    A.    Defendant made a promise to Plaintiff to move the arrearages created from the COVID-19 forbearance to the back of the note.

    B.    Plaintiff reasonably and substantially relied on the promise to his detriment.

Copy from re:SearchTX

## SIXTH CAUSE OF ACTION:
### <u>FRAUD IN THE INDUCEMENT</u>

24.     To the extent not inconsistent herewith, Plaintiff incorporates by reference the allegations made in paragraphs 1 through 23 as if set forth fully herein.

25.     Plaintiff shows that Defendant made material, false representations to Plaintiff with the knowledge of their falsity or with reckless disregard of the truth with the intention that such representations be acted upon by Plaintiff and that Plaintiff relied on these representations to his detriment.

26.     Plaintiff would further show that Defendant concealed or failed to disclose material facts within the knowledge of Defendant, that Defendant knew that Plaintiff did not have knowledge of the same and did not have equal opportunity to discover the truth, and that Defendant intended to induce Plaintiff to enter into multiple transactions which made the basis of this suit by such concealment or failure to disclose.

27.     Defendant used deceit or trickery to induce Plaintiff to act to his disadvantage, by causing him to enter into a forbearance but failed to disclose that once the forbearance was up all months that had been part of the forbearance would need to be paid in one lump sum. But for the deceit and trickery of Defendant, Plaintiff would not have entered into said forbearance agreement.  The deceit and trickery used by Defendant, when made, was known to contain false and misleading representations or were recklessly asserted by Defendant without any knowledge of truth.  Furthermore, Defendant was aware, or should have been aware, of Plaintiff's lack of sophistication with financial and/or real estate transactions.

28.     A confidential or "informal fiduciary" relationship existed between the parties. Defendant had a duty to disclose these facts to Plaintiff and was deliberately silent when Defendant had a duty to speak.

Copy from re:SearchTX

29.     Defendant used such trickery and deceit and false representations with the intent that Plaintiff would end up defaulting on the loan so that Defendant could eventually post the Property for a Foreclosure Sale.

30.     Plaintiff acted in reliance on the misrepresentations and the reliance on such misrepresentations were justifiable and reasonable.

31.     Furthermore, Defendant knew Plaintiff was ignorant of the nondisclosed facts and lacked opportunity to discover the truth.

32.     As a result of the unconscionable actions and intentional nondisclosure of Defendant set out above, Plaintiff was harmed, and should be allowed recovery of his actual damages.  In order to fully compensate Plaintiff, equitable relief in the form of rescission is also proper.  The actions of the Defendant also warrant exemplary damages to deter such conduct in the future.

## DAMAGES:
## ACTUAL DAMAGES

33.     Plaintiff is entitled to recover his actual damages from Defendant for which Plaintiff pleads in an amount which does not exceed the jurisdictional limits of this Court.

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

34.     Plaintiff endured stress, anxiety, and loss of sleep as a result of Defendant's misconduct. Accordingly, Plaintiff is entitled to recover mental anguish damages from Defendant for which he pleads in an amount which does not exceed the jurisdictional limits of this Court.

## EXEMPLARY DAMAGES

35.     Plaintiff is entitled to recover his exemplary damages from Defendant for which Plaintiff pleads in an amount which does not exceed the jurisdictional limits of this Court.

**ATTORNEYS' FEES**

36.     Plaintiff was forced to employ the undersigned attorneys and has agreed to pay them reasonable attorneys' fees for their services. Plaintiff is entitled to recover reasonable attorneys' fees pursuant to Chapter 38 of the Texas Civil Practices & Remedies Code for which Plaintiff pleads in an amount which does not exceed the jurisdictional limits of this Court.

**CONDITIONS PRECEDENT**

37.     All conditions precedent to the Plaintiff's right to bring these causes of action have been performed, have occurred, or have been waived.

**REQUEST FOR DISCLOSURES**

38.     JPM Mortgage Acquisition Corp. is hereby requested to disclose to Jason Stell, within 50 days of service of this request, the information and material described in Rule 194 of the Texas Rules of Civil Procedure.

**APPLICATION FOR TEMPORARY RESTRAINING ORDER**

39.     To the extent not inconsistent herewith, Plaintiff incorporates by reference the allegations made in paragraph 1 through paragraph 37 as if set forth fully herein.

40.     Unless Defendant is enjoined, Plaintiff will suffer probable harm which is imminent and irreparable since Defendant is about to sell Plaintiff's Property at a foreclosure sale on February 7, 2023 thereby depriving Plaintiff of ownership of the Property. Plaintiff has no adequate remedy at law because the subject matter is real property and any legal remedy of which Plaintiff may avail herself will not give his as complete, equal, adequate, and final a remedy as the injunctive relief sought in this Application.

Copy from re:SearchTX

41.     Therefore, Plaintiff request that this Court issue a Temporary Restraining Order and, thereafter, a Temporary Injunction, to restrain Defendant from selling the real property which is the subject matter of this lawsuit commonly known as 1867 Garnet Breeze Drive, Rosharon, Texas 77583.

42.     Plaintiff further requests that, upon trial on the merits, Defendant be permanently enjoined from the same acts listed in Paragraph 41 above.

43.     Plaintiff is likely to prevail on the merits of the lawsuit as described above.

44.     The granting of the relief requested is not inconsistent with public policy considerations.

## **BOND**

45.     Plaintiff is willing to post a reasonable temporary restraining order bond and requests that the Court set such bond.

## **PRAYER**

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully requests that:

A.     Defendant be cited to appear and answer herein;

B.     The Court conduct a hearing on Plaintiff's Application for Injunctive Relief;

C.     A Temporary Restraining Order be issued restraining Defendant, its agents, employees, officers, directors, shareholders, and legal counsel, and those acting in concert or participation with them who receive actual notice of the Order, by personal service or otherwise, from selling the real property which is the subject matter of this lawsuit and is commonly known as 1867 Garnet Breeze Drive, Rosharon, Texas 77583;

Copy from re:SearchTX

D.      A Permanent Injunction be entered enjoining Defendant from the same acts listed

in Paragraph C above; and

E.      Upon final hearing or trial hereof, the Court order a judgment in favor of Jason

Stell against JPM Mortgage Acquisition Corp. for his actual damages, mental

anguish damages, exemplary damages, reasonable attorneys' fees, all costs of

court, and such other and further relief, both general and special, at law or in

equity, to which Plaintiff may be entitled.

Respectfully submitted,

VILT LAW, P.C.

By:_____

ROBERT C. VILT
Texas Bar Number 00788586
Email: clay@viltlaw.com
5177 Richmond Avenue, Suite 1142
Houston, Texas 77056
Telephone:     713.840.7570
Facsimile:     713.877.1827
ATTORNEYS FOR PLAINTIFF

Copy from re:SearchTX

D.    A Permanent Injunction be entered enjoining Defendant from the same acts listed in Paragraph C above; and

E.    Upon final hearing or trial hereof, the Court order a judgment in favor of Jason Stell against JPM Mortgage Acquisition Corp. for his actual damages, mental anguish damages, exemplary damages, reasonable attorneys' fees, all costs of court, and such other and further relief, both general and special, at law or in equity, to which Plaintiff may be entitled.

Respectfully submitted,

VILT LAW, P.C.

By: _____
    ROBERT C. VILT
    Texas Bar Number 00788586
    Email: clay@viltlaw.com
5177 Richmond Avenue, Suite 1142
Houston, Texas 77056
Telephone:    713.840.7570
Facsimile:    713.877.1827
ATTORNEYS FOR PLAINTIFF

CAUSE NO. _____

| | | |
|---|---|---|
| **JASON STELL** | § | **IN THE DISTRICT COURT OF** |
| | § | |
| **v.** | § | **BRAZORIA COUNTY, TEXAS** |
| | § | |
| **J.P. MORGAN MORTGAGE** | § | |
| **ACQUISITION CORP.** | § | **_____ JUDICIAL DISTRICT** |

---

### AFFIDAVIT OF JASON STELL

---

| | | |
|---|---|---|
| **STATE OF TEXAS** | § | |
| | § | **KNOW ALL MEN BY THESE PRESENTS** |
| **COUNTY OF BRAZORIA** | § | |

BEFORE ME, the undersigned authority, on this day personally appeared Jason Stell who, after being duly sworn, deposes and says:

1. My name is Jason Stell. I am the Plaintiff in the above-captioned lawsuit. I have read the Original Petition, Application for Injunctive Relief, and Request for Disclosures to which this Affidavit relates and offer this Affidavit in support of the statements and arguments asserted therein.

2. The subject matter of this lawsuit is the real property and the improvements thereon located at 1867 Garnet Breeze Drive, Rosharon, Texas 77583 (the "Property").

3. I purchased the Property on or about October 29, 2014. During the process of purchasing the Property, I executed a Promissory Note ("Note") in the amount of $183,571.00 as well as a Deed of Trust in which Guild Mortgage Company, is listed as the Lender.

4. Upon information and belief, the Note and Deed of Trust were subsequently transferred to J.P. Mortgage Acquisition Corp. ("JPM" or "Defendant") for which Carrington Mortgage Services, LLC ("Carrington") acts as the loan servicer.

5. I entered into a Loan Modification Agreement (Deed of Trust) with Carrington Mortgage Services, LLC as the Servicer and Authorized Agent of J.P. Morgan Mortgage Acquisition Corp on July 19, 2018 for a new principal balance of $174,873.91 with an interest rate of 4.3750%.

Copy from re:SearchTX

6. As I was starting to face financial difficulties due to the COVID-19 pandemic, I contacted JPM to pursue loss mitigation options on March 1, 2020 - JPM granted me a Covid-19 Forbearance and promised me that the loan would be restructures once the forbearance expired. After the forbearance ended, I contacted JPM to see when my payment was going to resume. JPM then informed me that I was placed in a streamlined loan modification process but then I heard nothing back. I was given the option to take a loan from Carrington but rejected it as it was not a loan modification. I submitted another application but Carrington kept requesting more information. Even though I have the money to pay the monthly mortgage payments I kept getting denied in defiance of JPM's promise to restructure the loan.

7. Accordingly, I allege that Defendant is about to wrongfully sell my Property at a foreclosure sale on February 7, 2023 without providing the required notices and in violation of my due process rights.

8. The latest foreclosure posting has severely affected my personal and professional life. I have trouble sleeping and focusing on simple tasks. My anxiety level as reached a level I have never experienced in my life and my stress level has negatively impacted both my business and my family life.


I have read the foregoing Affidavit and attest that the information contained therein is true and correct in all respects based upon my personal knowledge.

_____
**JASON STELL**


SUBSCRIBED AND SWORN TO BEFORE ME on this the 31 day of January 2023.

_____
NOTARY PUBLIC IN AND FOR
THE STATE OF ~~TEXAS~~ CA

My commission expires: _5|9|26_____


SARA COTTINGHAM
Notary Public - California
Los Angeles County
Commission # 2400670
My Comm. Expires May 9, 2026

Copy from re:SearchTX

# EXHIBIT 1

Copy from re:SearchTX

NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.

# DEED OF TRUST

After recording please return to:
GUILD MORTGAGE COMPANY -
ATTN: DMD

5898 COPLEY DRIVE
SAN DIEGO, CA 92111

------------------[Space Above This Line For Recording Data]------------------

Loan No.: 351-2004076
MIN: 100019935120040765

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A)    "Security Instrument" means this document, which is dated **October 29, 2014**, together with all Riders to this document.

(B)    "Borrower" is JASON JEREMIAH STELL, A SINGLE MAN. Borrower is the grantor under this Security Instrument.

(C)    "Lender" is GUILD MORTGAGE COMPANY, A CALIFORNIA CORPORATION. Lender is a corporation organized and existing under the laws of CALIFORNIA. Lender's address is 5898 COPLEY DRIVE, SAN DIEGO, CA 92111. Lender includes any holder of the Note who is entitled to receive payments under the Note.

(D)    "Trustee" is CHRIS PEIRSON. Trustee's address is 4400 ALPHA ROAD, DALLAS, TX 75244.

| Texas Deed of Trust—Single Family—Fannie Mae/Freddie Mac Uniform Instrument MERS Modified | | Form 3044 1/01 |
|---|---|---|
| The Compliance Source, Inc. | Page 1 of 17 | Modified by Compliance Source 14301TX 08/00 Rev. 05/14 |
| www.compliancesource.com | | ©2000-2014, The Compliance Source, Inc. |



```
* 3 5 1 - 2 0 0 4 0 7 6 *
```

RECORDED BY
TEXAS AMERICAN TITLE COMPANY

GF _7695-14-2709_
CLOSER _H H_

Copy from re:SearchTX

(E)    "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS **is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(F)    "**Note**" means the promissory note signed by Borrower and dated **October 29, 2014.** The Note states that Borrower owes Lender **One Hundred Eighty Three Thousand Five Hundred Seventy One and 00/100ths** Dollars (U.S. **$183,571.00**) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **November 1, 2044.**

(G)    "**Property**" means the property that is described below under the heading "Transfer of Rights in the Property."

(H)    "**Loan**" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I)    "**Riders**" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower (check box as applicable):

☐ Adjustable Rate Rider    ☐ Condominium Rider    ☐ Second Home Rider
☐ Balloon Rider    ☒ Planned Unit Development Rider    ☐ Biweekly Payment Rider
☐ 1-4 Family Rider    ☐ Revocable Trust Rider
☐ Other(s) [specify]

(J)    "**Applicable Law**" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K)    "**Community Association Dues, Fees, and Assessments**" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L)    "**Electronic Funds Transfer**" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M)    "**Escrow Items**" means those items that are described in Section 3.

(N)    "**Miscellaneous Proceeds**" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to,

---

Texas Deed of Trust—Single Family—Fannie Mae/Freddie Mac Uniform Instrument                    Form 3044 1/01
MERS Modified
The Compliance Source, Inc.                    Page 2 of 17    Modified by Compliance Source 14301TX 08/00 Rev. 05/14
www.compliancesource.com                    ©2000-2014, The Compliance Source, Inc.



*   3   5   1   -   2   0   0   4   0   7   6   *

Copy from re:SearchTX

or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(O)**   **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(P)**   **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(Q)**   **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 *et seq.*) and its implementing regulation, Regulation X (12 C.F.R. Part 1024), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(R)**   **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

**TRANSFER OF RIGHTS IN THE PROPERTY**

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the:

| County | of | BRAZORIA |
|---|---|---|
| [Recording Jurisdiction] | | [Name of Recording Jurisdiction] |

LOT 37, BLOCK 1, OF FINAL PLAT STERLING LAKES AT IOWA COLONY SEC 12B, A SUBDIVISION IN BRAZORIA COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF, RECORDED AT FILM CODE NO. 2013060392 OF THE PLAT RECORDS OF BRAZORIA COUNTY, TEXAS.

which currently has the address of 1867 GARNET BREEZE DRIVE

[Street]

**ROSHARON**, Texas    77583                ("Property Address").
[City]        [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's

Texas Deed of Trust—Single Family—Fannie Mae/Freddie Mac Uniform Instrument        Form 3044 1/01
MERS Modified
The Compliance Source, Inc.        Page 3 of 17    Modified by Compliance Source 14301TX 08/00 Rev. 05/14
www.compliancesource.com                    ©2000-2014, The Compliance Source, Inc.

*351-2004076*

Copy from re:SearchTX

successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the

---

*351-2004076*

Copy from re:SearchTX

repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3.  **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10.  These items are called "Escrow Items."  At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items.  Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time.  Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require.  Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9.  If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount.  Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA.  Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank.  Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA.  Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds.  Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds.  Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA.  If there is a shortage of Funds held in escrow, as defined under

Texas Deed of Trust—Single Family—Fannie Mae/Freddie Mac Uniform Instrument          Form 3044 1/01
MERS Modified
The Compliance Source, Inc.                    Page 5 of 17      Modified by Compliance Source 14301TX 08/00 Rev. 05/14
www.compliancesource.com                                        ©2000-2014, The Compliance Source, Inc.



Copy from re:SearchTX

RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

*351-2004076*

Copy from re:SearchTX

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6.    **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7.    **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single

Texas Deed of Trust—Single Family—Fannie Mae/Freddie Mac Uniform Instrument                                        Form 3044 1/01
MERS Modified
The Compliance Source, Inc.                          Page 7 of 17      Modified by Compliance Source 14301TX 08/00 Rev. 05/14
www.compliancesource.com                                              ©2000–2014, The Compliance Source, Inc.



payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8.  **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9.  **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10.  **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be

Texas Deed of Trust—Single Family—Fannie Mae/Freddie Mac Uniform Instrument            Form 3044 1/01
MERS Modified
The Compliance Source, Inc.                        Page 8 of 17        Modified by Compliance Source 14301TX 08/00 Rev. 05/14
www.compliancesource.com                                              ©2000-2014, The Compliance Source, Inc.

*351-2004076*

non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a)  Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b)  Any such agreements will not affect the rights Borrower has – if any – with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11.  Assignment of Miscellaneous Proceeds; Forfeiture.  All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by

*  3 5 1 - 2 0 0 4 0 7 6  *

Copy from re:SearchTX

this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

Texas Deed of Trust—Single Family—Fannie Mae/Freddie Mac Uniform Instrument                          Form 3044 1/01
MERS Modified
The Compliance Source, Inc.                    Page 10 of 17    Modified by Compliance Source 14301TX 08/00 Rev. 05/14
www.compliancesource.com                                      ©2000-2014, The Compliance Source, Inc.

*351-2004076*

Copy from re:SearchTX

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained

---

Texas Deed of Trust—Single Family—Fannie Mae/Freddie Mac Uniform Instrument                                  Form 3044 1/01
MERS Modified
The Compliance Source, Inc.                          Page 11 of 17      Modified by Compliance Source 14301TX 08/00 Rev. 05/14
www.compliancesource.com                                                ©2000-2014, The Compliance Source, Inc.



in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. These conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this

Texas Deed of Trust—Single Family—Fannie Mae/Freddie Mac Uniform Instrument   Form 3044 1/01
MERS Modified
The Compliance Source, Inc.   Page 12 of 17   Modified by Compliance Source 1430 TX 08/00 Rev. 05/14
www.compliancesource.com   ©2000-2014, The Compliance Source, Inc.

*351-2004076*

Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

Texas Deed of Trust—Single Family—Fannie Mae/Freddie Mac Uniform Instrument        Form 3044 1/01
MERS Modified
The Compliance Source, Inc.      Page 13 of 17     Modified by Compliance Source 14301TX 08/00 Rev. 05/14
www.compliancesource.com                                              ©2000-2014, The Compliance Source, Inc.

*351-2004076*

Copy from re:SearchTX

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice will result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence. For the purposes of this Section 22, the term "Lender" includes any holder of the Note who is entitled to receive payments under the Note.

If Lender invokes the power of sale, Lender or Trustee shall give notice of the time, place and terms of sale by posting and filing the notice at least 21 days prior to sale as provided by Applicable Law. Lender shall mail a copy of the notice to Borrower in the manner prescribed by Applicable Law. Sale shall be made at public vendue. The sale must begin at the time stated in the notice of sale or not later than three hours after that time and between the hours of 10 a.m. and 4 p.m. on the first Tuesday of the month. Borrower authorizes Trustee to sell the Property to the highest bidder for cash in one or more parcels and in any order Trustee determines. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying indefeasible title to the Property with covenants of general warranty from Borrower. Borrower covenants and agrees to defend generally the purchaser's title to the Property against all claims and demands. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

If the Property is sold pursuant to this Section 22, Borrower or any person holding possession of the Property through Borrower shall immediately surrender possession of the Property to the purchaser at that sale. If possession is not surrendered, Borrower or such person shall be a tenant at sufferance and may be removed by writ of possession or other court proceeding.

23. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall provide a release of this Security Instrument to Borrower or Borrower's designated agent in accordance with Applicable Law. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. **Substitute Trustee; Trustee Liability.** All rights, remedies and duties of Trustee under this Security Instrument may be exercised or performed by one or more trustees acting alone or together. Lender, at its option and with or without cause, may from time to time, by power of attorney or otherwise, remove or substitute any trustee, add one or more trustees, or appoint a successor trustee to any Trustee without the necessity of any formality other

---



than a designation by Lender in writing. Without any further act or conveyance of the Property the substitute, additional or successor trustee shall become vested with the title, rights, remedies, powers and duties conferred upon Trustee herein and by Applicable Law.

Trustee shall not be liable if acting upon any notice, request, consent, demand, statement or other document believed by Trustee to be correct. Trustee shall not be liable for any act or omission unless such act or omission is willful.

**25. Subrogation.** Any of the proceeds of the Note used to take up outstanding liens against all or any part of the Property have been advanced by Lender at Borrower's request and upon Borrower's representation that such amounts are due and are secured by valid liens against the Property. Lender shall be subrogated to any and all rights, superior titles, liens and equities owned or claimed by any owner or holder of any outstanding liens and debts, regardless of whether said liens or debts are acquired by Lender by assignment or are released by the holder thereof upon payment.

**26. Partial Invalidity.** In the event any portion of the sums intended to be secured by this Security Instrument cannot be lawfully secured hereby, payments in reduction of such sums shall be applied first to those portions not secured hereby.

**27. Purchase Money; Owelty of Partition; Renewal and Extension of Liens Against Homestead Property; Acknowledgment of Cash Advanced Against Non-Homestead Property. Check box as applicable:**

☒ **Purchase Money.**

The funds advanced to Borrower under the Note were used to pay all or part of the purchase price of the Property. The Note also is primarily secured by the vendor's lien retained in the deed of even date with this Security Instrument conveying the Property to Borrower, which vendor's lien has been assigned to Lender, this Security Instrument being additional security for such vendor's lien.

☐ **Owelty of Partition.**

The Note represents funds advanced by Lender at the special instance and request of Borrower for the purpose of acquiring the entire fee simple title to the Property and the existence of an owelty of partition imposed against the entirety of the Property by a court order or by a written agreement of the parties to the partition to secure the payment of the Note is expressly acknowledged, confessed and granted.

☐ **Renewal and Extension of Liens Against Homestead Property.**

The Note is in renewal and extension, but not in extinguishment, of the indebtedness described on the attached Renewal and Extension Exhibit which is incorporated by reference. Lender is expressly subrogated to all rights, liens and remedies securing the original holder of a note evidencing Borrower's indebtedness and the original liens securing the indebtedness are renewed and extended to the date of maturity of the Note in renewal and extension of the indebtedness.

☐ **Acknowledgment of Cash Advanced Against Non-Homestead Property.**

The Note represents funds advanced to Borrower on this day at Borrower's request and Borrower acknowledges receipt of such funds. Borrower states that Borrower does not now and does not intend ever to reside on, use in any manner, or claim the Property secured by this Security Instrument as a business or residential homestead. Borrower disclaims all homestead rights, interests and exemptions related to the Property.

**28. Loan Not a Home Equity Loan. The Loan evidenced by the Note is not an extension of credit as defined by Section 50(a)(6) or Section 50(a)(7), Article XVI, of the Texas Constitution. If the Property is used as Borrower's residence, then Borrower agrees that Borrower will receive no cash from the Loan evidenced by the Note and that any advances not necessary to purchase the Property, extinguish an owelty lien, complete construction, or renew and extend a prior lien against the Property, will be used to reduce the**

Texas Deed of Trust—Single Family—Fannie Mae/Freddie Mac Uniform Instrument                 Form 3044 1/01
MERS Modified
The Compliance Source, Inc.                          Page 15 of 17    Modified by Compliance Source 14301TX 08/00 Rev. 08/14
www.compliancesource.com                                             ©2000-2014, The Compliance Source, Inc.



Copy from re:SearchTX

balance evidenced by the Note or such Loan will be modified to evidence the correct Loan balance, at Lender's option. Borrower agrees to execute any documentation necessary to comply with this Section 28.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.



_____ (Seal)    _____ (Seal)
JASON JEREMIAH STELL        -Borrower                                -Borrower

_____ (Seal)    _____ (Seal)
                            -Borrower                                -Borrower

*351-2004076*

Copy from re:SearchTX

## ACKNOWLEDGMENT

State of *Texas* §
County of *Brazoria* §

This instrument was acknowledged before me on *29 October, 2014* by
JASON JEREMIAH STELL.

Signature of Officer

Printed Name *Terri S. Jones*

Title of Officer *Notary Public*

My Commission Expires: *9/7/2015*

TERRI S JONES
My Commission Expires
September 7, 2015

(Seal)

Loan Originator Organization: GUILD MORTGAGE COMPANY, NMLSR ID: 3274
Individual Loan Originator's Name: SHANNON MARIE COSTANZI, NMLSR ID: 127616

---

Texas Deed of Trust—Single Family—Fannie Mac/Freddie Mac Uniform Instrument                    Form: 3044 1/01
MERS Modified
The Compliance Source, Inc.                                    Page 17 of 17    Modified by Compliance Source 14301TX 08/00 Rev. 08/14
www.compliancesource.com                                            ©2000-2014, The Compliance Source, Inc.

*351-2004076*

Copy from re:SearchTX

Loan Originator Organization: GUILD MORTGAGE COMPANY, NMLSR ID: 3274
Individual Loan Originator's Name: SHANNON MARIE COSTANZI, NMLSR ID: 127616
Loan No.: 351-2004076
MIN: 100019935120040765

# PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this 29th day of October, 2014, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date, given by the undersigned (the "Borrower") to secure Borrower's Note to GUILD MORTGAGE COMPANY, A CALIFORNIA CORPORATION (the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

1867 GARNET BREEZE DRIVE, ROSHARON, TX 77583
[Property Address]

The Property includes, but is not limited to, a parcel of land improved with a dwelling, together with other such parcels and certain common areas and facilities, as described in Declaration of Covenants, Conditions, and Restrictions (the "Declaration"). The Property is a part of a planned unit development known as:

STERLING LAKES
[Name of Planned Unit Development]

(the "PUD"). The Property also includes Borrower's interest in the homeowners association or equivalent entity owning or managing the common areas and facilities of the PUD (the "Owners Association") and the uses, benefits and proceeds of Borrower's interest.

**PUD COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A. **PUD Obligations.** Borrower shall perform all of Borrower's obligations under the PUD's Constituent Documents. The "Constituent Documents" are the (i) Declaration; (ii) articles of incorporation, trust instrument or any equivalent document which creates the Owners Association; and (iii) any by-laws or other rules or regulations of the Owners Association. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

Multistate PUD Rider—Single Family— Fannie Mae/Freddie Mac Uniform Instrument      Form 3150 1/01
The Compliance Source, Inc.                Page 1 of 3               14501ML 08/00 Rev. 11/04
www.compliancesource.com                                        ©2000-2004, The Compliance Source, Inc.

*351-2004076*

Copy from re:SearchTX

**B. Property Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, for which Lender requires insurance, then:

(i)  Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii)  Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i)  the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii)  any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender; (iii)  termination of professional management and assumption of self-management of the Owners Association; or (iv)  any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured

Multistate PUD Rider—Single Family– Fannie Mae/Freddie Mac Uniform Instrument                                            Form 3150 1/01
The Compliance Source, Inc.                                        Page 2 of 3                                        14501MU 08/00 Rev. 11/04
www.compliancesource.com                                                                                            ©2000-2004, The Compliance Source, Inc.



Copy from re:SearchTX

by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this PUD Rider.

 (Seal)
**JASON JEREMIAH STELL** -Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

[Sign Original Only]

Multistate PUD Rider—Single Family—Fannie Mae/Freddie Mac Uniform Instrument       Form 3150 1/01
The Compliance Source, Inc.                          Page 3 of 3                      14501MU 08/00 Rev. 11/04
www.compliancesource.com                                                             ©2000-2004, The Compliance Source, Inc.

*351-2004076*

Copy from re:SearchTX

# FILED and RECORDED

Instrument Number: 2014047191

Filing and Recording Date: 10/30/2014 02:39:08 PM  Pages: 21  Recording Fee: $102.00

I hereby certify that this instrument was FILED on the date and time stamped hereon and RECORDED in the OFFICIAL PUBLIC RECORDS of Brazoria County, Texas.



Joyce Hudman, County Clerk
Brazoria County, Texas

ANY PROVISION CONTAINED IN ANY DOCUMENT WHICH RESTRICTS THE SALE, RENTAL, OR USE OF THE REAL PROPERTY DESCRIBED THEREIN BECAUSE OF RACE OR COLOR IS INVALID UNDER FEDERAL LAW AND IS UNENFORCEABLE.

*DO NOT DESTROY - Warning, this document is part of the Official Public Record.*

cclerk-carla

Copy from re:SearchTX

# EXHIBIT 2

Copy from re:SearchTX

2018036610 DT Total Pages: 7

Title: Loan Modification Agreement (DEED OF TRUST)

This Document Prepared By:
**BRANDY MANGALINDAN**
**CARRINGTON MORTGAGE SERVICES, LLC**
**CARRINGTON DOCUMENT SERVICES**
**ANAHEIM, CA 92806**
**1-866-874-5860**

When Recorded Mail To:
**CARRINGTON MORTGAGE SERVICES, LLC**
**CARRINGTON DOCUMENT SERVICES**
**1600 SOUTH DOUGLASS ROAD, SUITE 200A**
**ANAHEIM, CA 92806**

Tax/Parcel #: 7791-1221-037

_____ [Space Above This Line for Recording Data] _____

| | |
|---|---|
| Original Principal Amount: $183,571.00 | FHA/VA/RHS Case No: 049020635223988 |
| Unpaid Principal Amount: $172,437.27 | Loan No: 4000296235 |
| New Principal Amount: $174,873.91 | |
| New Money (Cap): $2,436.64 | |

## LOAN MODIFICATION AGREEMENT (DEED OF TRUST)

### NOTICE OF CONFIDENTIALITY RIGHTS:
IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OF THE FOLLOWING INFORMATION FROM THIS INSTRUMENT BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVERS LICENSE NUMBER.

This Loan Modification Agreement ("Agreement"), made this 27TH day of JUNE, 2018, between JASON JEREMIAH STELL A SINGLE MAN ("Borrower"), whose address is 1867 GARNET BREEZE DRIVE, ROSHARON, TEXAS 77583 and CARRINGTON MORTGAGE SERVICES, LLC AS SERVICER AND AUTHORIZED AGENT OF J.P. MORGAN MORTGAGE ACQUISITION CORP ("Lender"), whose address is 1600 SOUTH DOUGLASS ROAD, SUITE 200A,  ANAHEIM, CA 92806

Carrington Custom Loan Modification Agreement 06262018_307

Page 1

4000296235

Copy from re:SearchTX

amends and supplements (1) the Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated **OCTOBER 29, 2014** and recorded on **OCTOBER 30, 2014** in **INSTRUMENT NO. 2014047191, BRAZORIA COUNTY, TEXAS**, and (2) the Note, in the original principal amount of U.S. **$183,571.00**, bearing the same date as, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property," located at **1867 GARNET BREEZE DRIVE, ROSHARON, TEXAS 77583**

the real property described is located in **BRAZORIA COUNTY, TEXAS** and being set forth as follows:

**SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF:**

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1. As of, **JULY 1, 2018** the amount payable under the Note and the Security Instrument (the "Unpaid Principal Balance") is U.S. **$174,873.91**, consisting of the amount(s) loaned to Borrower by Lender, plus capitalized interest in the amount of U.S. **$2,436.64** and other amounts capitalized, which is limited to escrows and any legal fees and related foreclosure costs that may have been accrued for work completed.

2. Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of Lender. Interest will be charged on the Unpaid Principal Balance at the yearly rate of **4.3750%**, from **JULY 1, 2018**. The yearly rate of **4.3750%** will remain in effect until principal and interest are paid in full.

   Borrower promises to make the total modified monthly mortgage payment of U.S. **$1,544.28**, beginning on the 1ST day of **AUGUST, 2018**, and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full. Borrower's payment consists of payments for principal and interest of U.S. **$873.12**, plus payments for property taxes, hazard insurance, and any other permissible escrow items of US **$671.16**. Borrower understands that the modified monthly mortgage payment is subject to change if there is an increase or decrease in property taxes, insurance, or any other permissible escrow items. If on **JULY 1, 2048** (the "Maturity Date"), Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date.

3. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in the Borrower is sold or transferred and the Borrower is not a natural person) without the Lender's prior written consent, the Lender may require immediate payment in full of all sums secured by this Security Instrument.

   If the Lender exercises this option, the Lender shall give the Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which the Borrower must pay all sums secured by this Security Instrument. If the Borrower fails to pay these sums prior to the expiration of this period, the Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on the Borrower.

4. The Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, the Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that the Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever cancelled, null and void, as of the date specified in Paragraph No. 1 above:
   (a) all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note; and

Carrington Custom Loan Modification Agreement 06262018_307



Copy from re:SearchTX

(b)  all terms and provisions of any adjustable rate rider, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

5.  If the Borrower is currently subject to the protections of any automatic stay in bankruptcy, or have obtained a discharge in bankruptcy proceeding without reaffirming the mortgage loan debt, nothing in this Agreement or any other document executed in connection with this Agreement shall be construed as an attempt by Lender to impose personal liability under the Note and Deed of Trust/Mortgage and Promissory Note/Subordinate Mortgage. In such case, this Agreement is entered into in the ordinary course of business between the Lender and the Borrower in lieu of pursuit of in rem relief to enforce the lien.  This Agreement does not revive the Borrower's personal liability under the Note and Deed of Trust/Mortgage and Promissory Note/Subordinate Mortgage, nor is it an attempt to collect, recover or offset any such debt as a personal liability of Borrower under the Note and Deed of Trust/Mortgage and Subordinate Note/Mortgage.

6.  Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument. Except as otherwise specifically provided in this Agreement, the Note and Security Instrument will remain unchanged, and Borrower and Lender will be bound by, and comply with, all of the terms and provisions thereof, as amended by this Agreement.

7.  Borrower agrees to make and execute other documents or papers as may be necessary to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.

8.  Borrower agrees that any costs, fees and/or expenses incurred in connection with servicing the loan that may be legally charged to the account, but have not been charged to the account as of the Modification Effective Date, may be charged to the account at a later date and shall be the Borrower's responsibility to pay in full. For example, if the loan is in foreclosure there may be foreclosure fees and costs that have been incurred but not yet assessed to the account as of the date the Modification Effective Date; Borrower will remain liable for any such costs, fees and/or expenses.

4000296235

Copy from re:SearchTX

In Witness Whereof, I have executed this Agreement.

_____          7/13/18
Borrower: JASON JEREMIAH STELL                                    Date
_____ [Space Below This Line for Acknowledgments] _____

**BORROWER ACKNOWLEDGMENT**

State of TEXAS

County of _Fort Bend_

This instrument was acknowledged before me on _July 13, 2018_          by **JASON
JEREMIAH STELL**

_____
Notary Public

Printed Name: _Jacqueline Silva_

My commission expires: _October 26, 2021_

JACQUELINE SILVA
Notary ID #131330488
My Commission Expires
October 26, 2021

4600296235

Copy from re:SearchTX

In Witness Whereof, the Lender has executed this Agreement.

**CARRINGTON MORTGAGE SERVICES, LLC AS SERVICER AND AUTHORIZED AGENT OF J.P. MORGAN MORTGAGE ACQUISITION CORP**

By _____ (print name)
    Jill A. Fuller, Director, Loss Mitigation
    Carrington Mortgage Services, LLC
        Attorney in Fact

7/17/18  Date

[Space Below This Line for Acknowledgments]

**LENDER ACKNOWLEDGMENT**

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California
County of  ORANGE

On 7-17-18 before me _____ Iliana Allende _____ Notary Public, personally appeared _____ Jill A. Fuller _____, the _____ Director _____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____
    Signature of Notary Public



ILIANA ALLENDE
Notary Public – California
Orange County
Commission # 2230719
My Comm. Expires Feb 9, 2022


4000296235

Copy from re:SearchTX

## EXHIBIT A

**BORROWER(S):  JASON JEREMIAH STELL A SINGLE MAN**

**LOAN NUMBER:  4000296235**

**LEGAL DESCRIPTION:**

The land referred to in this document is situated in the STATE OF TEXAS, COUNTY OF BRAZORIA,
CITY OF ROSHARON, and described as follows:

LOT 37, IN BLOCK 1, OF STERLING LAKES AT IOWA COLONY SEC. 12B, A
SUBDIVISION IN BRAZORIA COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT
THEREOF, RECORDED AT
COUNTY CLERK'S FILE NO. 2013060392, OF THE MAP AND/OR PLAT RECORDS OF
BRAZORIA COUNTY,
TEXAS.

ALSO KNOWN AS: 1867 GARNET BREEZE DRIVE, ROSHARON, TEXAS 77583

4000296235

Copy from re:SearchTX

# FILED and RECORDED

Instrument Number: 2018036610

Filing and Recording Date: 07/19/2018 08:46:08 AM  Pages: 7  Recording Fee: $51.00

I hereby certify that this instrument was FILED on the date and time stamped hereon and
RECORDED in the OFFICIAL PUBLIC RECORDS of Brazoria County, Texas.

Joyce Hudman, County Clerk
Brazoria County, Texas

ANY PROVISION CONTAINED IN ANY DOCUMENT WHICH RESTRICTS THE SALE, RENTAL, OR USE OF
THE REAL PROPERTY DESCRIBED THEREIN BECAUSE OF RACE OR COLOR IS INVALID UNDER
FEDERAL LAW AND IS UNENFORCEABLE.

*DO NOT DESTROY - Warning, this document is part of the Official
Public Record.*

cclerk-april

Copy from re:SearchTX

# EXHIBIT 3

Copy from re:SearchTX

Carrington Foreclosure Services, LLC
P.O. Box 3309
Anaheim, California 92803
For Sale Information: (888) 313-1969
For Reinstatement Requests: 1-866-874-5860
Pay Off Requests: 1-800-561-4567
TS#: 22-26941



2022000627 FORECLOSURE
Total Pages: 2



## NOTICE OF SUBSTITUTE TRUSTEE'S SALE

**WHEREAS**, on 10/29/2014, Jason Jeremiah Stell, a single man, as Grantor/Borrower, executed and delivered that certain Deed of Trust, in favor of Chris Peirson, as Trustee, Mortgage Electronic Registration Systems, Inc.("MERS") as beneficiary, as nominee for Guild Mortgage Company, a California Corporation, as Beneficiary which deed of trust secures the payment of that certain promissory note of even date therewith in the original amount of $183,571.00, payable to the order of Mortgage Electronic Registration Systems, Inc.("MERS") as beneficiary, as nominee for Guild Mortgage Company, a California Corporation, which Deed of Trust is Recorded on 10/30/2014 as Volume 2014047191, Book , Page , Loan Modification recorded on 7/19/2018 as Instrument No. 2018036610 in Brazoria County, Texas, Deed of Trust covers all of the real property, personal property, and fixtures described therein, including , but not limited to, all the following described property, rights and interests (the "Property"), to-wit;

**Lot 37, Block 1, of Final Plat Sterling Lakes at Iowa Colony Sec 12B, a subdivision in Brazoria County, Texas, according to the map or plat thereof, recorded at Film Code No. 2013060392 of the plat records of Brazoria County, Texas.**

Commonly known as: **1867 GARNET BREEZE DRIVE ROSHARON, TX 77583**

**WHEREAS**, the Trustee named in the Deed of Trust having been removed, the legal holder of the indebtedness described in the Deed of Trust appointed **Steve Leva, Sandy Dasigenis, Jeff Leva, Patricia Poston , Dustin George** or either of them, as Substitute Trustee (each being referred to as the "Substitute Trustee"), upon the contingency and in the manner authorized by the Deed of Trust: and

**WHEREAS**, defaults have occurred in the covenants of the Deed of Trust, monetary or otherwise, and the indebtedness secured by and described in the Deed of Trust is now wholly due, and Carrington Mortgage Services, LLC whose address is 1600 Douglass Road, Suite 200 A, Anaheim, CA 92806 is acting as the mortgage servicer for **J.P. Morgan Mortgage Acquisition Corp.**, which is the mortgagee of the Note and Deed of Trust or mortgage and the legal holder of such indebtedness and the liens securing same has requested either one of the Substitute Trustees to sell the Property in accordance with applicable law and the terms and provisions of the Deed of Trust. Carrington Mortgage Services, LLC is authorized to represent the mortgagee by virtue of a written servicing agreement with the mortgagee. Pursuant to that agreement and Texas Property Code Section 51.0025, Carrington Mortgage Services, LLC is authorized to administer the foreclosure referenced herein.

**NOW, THEREFORE, NOTICE IS HEREBY GIVEN**, that on  2/7/2023 at 1:00 PM, or no later than three (3) hours after such time, in **Brazoria** County, Texas, the Substitute Trustee will sell the Property at public venue to the highest bidder for cash. The sale will take place at the area designated by the Commissioner's Court for sales of real property under a power of sale conferred by a deed of trust or other contract lien as follows: **IN CORRIDOR, OUTSIDE ROOM 108 BRAZORIA COUNTY COURTHOUSE, ANGLETON, TX OR AS DESIGNATED BY THE COUNTY COMMISSIONER'S OFFICE**

**NOTICE IS FURTHER GIVEN** that , except to the extent that the Substitute Trustee may bind and obligate Mortgagors to warrant title the Property under the terms of the Deed of Trust, conveyance of the Property shall be made without any representations or warranties whatsoever, express or implied.



Copy from re:SearchTX

If the Trustee is unable to convey title for any reason, the successful bidder's sole and exclusive remedy shall be the return of monies paid to the Trustee, and the successful bidder shall have no further recourse.

If the sale is set aside for any reason, the Purchaser at the sale shall be entitled only to a return of the deposit paid. The Purchaser shall have no further recourse against the Mortgagor, the Mortgagee, or the Mortgagee's Attorney.

**ASSERT AND PROTECT YOUR RIGHTS AS A MEMBER OF THE ARMED FORCES OF THE UNITED STATES. IF YOU ARE OR YOUR SPOUSE IS SERVING ON ACTIVE MILITARY DUTY, INCLUDING ACTIVE MILITARY DUTY AS A MEMBER OF THE TEXAS NATIONAL GUARD OR THE NATIONAL GUARD OF ANOTHER STATE OR AS A MEMBER OF A RESERVE COMPONENT OF THE ARMED FORCES OF THE UNITED STATES, PLEASE SEND WRITTEN NOTICE OF THE ACTIVE DUTY MILITARY SERVICE TO THE SENDER OF THIS NOTICE IMMEDIATELY.**

**THIS INSTRUMENT APPOINTS THE SUBSTITUTE TRUSTEE(S) IDENTIFIED TO SELL THE PROPERTY DESCRIBED IN THE SECURITY INSTRUMENT IDENTIFIED IN THIS NOTICE OF SALE THE PERSON SIGNING THIS NOTICE IS THE ATTORNEY OR AUTHORIZED AGENT OF THE MORTGAGEE OR MORTGAGE SERVICER.**

WITNESS, my hand this 12/6/2022                WITNESS, my hand this ___ 12/8/2022 ___

By: Hung Pham, Trustee Sale Specialist
Carrington Foreclosure Services, LLC as
authorized agent for Mortgagee or Mortgage
Servicer
1600 South Douglass Road, Suite 140
Anaheim, CA 92806

By: Substitute Trustee(s)
Steve Leva, Sandy Dasigenis, Jeff Leva, Patricia
Poston

C/O Carrington Foreclosure Services, LLC
1600 South Douglass Road, Suite 140
Anaheim, CA 92806

2022000527
Brazoria County - Joyce Hudman, County Clerk
12/08/2022 10:37 AM
Total Pages: 2
Fee: 8.00

Copy from re:SearchTX



Filed for Record
6/2/2023 4:09 PM
Cassandra C. Tigner, District Clerk
Brazoria County, Texas
121454-CV
Alyssa Cook, Deputy

# BRAZORIA COUNTY DISTRICT CLERK
## DONNA STARKEY

### Process Request – Please Type/Print All Information
**\*One request for each party being served.**

**Cause No.** _____121454-CV_____

**Document(s) to be Served:** _____

Name of Party to be Served: _____

Registered Agent (if applicable): _____

Service Address: _____

City, State, Zip: _____

**Service by:  (check one)**

☐BCSO Bo Stallman                          ☐Certified Mail   ☐Restricted   ☒Non-Restricted

☐Constable David Thacker Pct. 1        ☐Return to Attorney by Mail: _____

☐Constable Willie Howell Pct. 2         _____

☐Constable Buck Stevens Pct. 3         ☐Email: _____

☐Constable James Brawner Pct. 4       ☐Pick up by (Name): _____

☐Publication (Name & Address of Newspaper) _____

☐Publication to OCA Portal/Website #of days _____

☐Posting at Courthouse Door

**Family –**

Relief Requested (Required): _____

Date of Birth/Place of Birth for Each Child (Required): _____

_____

**Civil –** As per TRCP 115, attach legal description of property if applicable and state relief requested.

Relief Requested (Required): _____

Property Description: _____

_____

**When Service is by SHERIFF/CONSTABLE, please provide as much information as possible by completing the blanks to expedite service.**

Description:

☐Male ☐Female  Date of Birth_____ Race_____ Eyes_____ Hair_____

Tattoos, Scars, Facial Hair, Glasses, etc._____

Other address person may be found: _____

Gate Access Code_____               Building Number_____

Descr. of house (i.e., trailer park, subdivision):_____

Cell/Home Phone:_____ Work Phone:_____

Any vehicles? Yr_____Make_____Model_____Color_____LP#_____

Best time to Serve:      ☐Days           ☐Evenings          ☐Nights

Name and address of Employer:_____

List any other information the deputies should know. For example, is party being served known to be violent, owns weapons, mental or physical illness, dogs in yard, locked gates, etc.?

_____

### Service requested by:

Name and Email: _____

Cell/Home Phone:_____ Work:_____

Filed for Record
2/2/2023 4:09 PM
Cassandra C. Tigner, District Clerk
Brazoria County, Texas
121454-CV
Alyssa Cook, Deputy

CAUSE NO. _____ 121454-CV

| | | |
|---|---|---|
| JASON STELL | § | IN THE DISTRICT COURT OF |
| | § | |
| v. | § | BRAZORIA COUNTY, TEXAS |
| | § | |
| J.P. MORGAN MORTGAGE | § | |
| ACQUISITION CORP. | § | _____ JUDICIAL DISTRICT |

## <u>TEMPORARY RESTRAINING ORDER</u>

ON THIS DATE Plaintiff's Application for Temporary Restraining Order was heard and considered before this Court. Based upon the pleadings, exhibits, records, and documents filed by Plaintiff and presented to the Court, as well as the arguments of legal counsel at the hearing, IT CLEARLY APPEARS THAT:

A.    Unless J.P. Morgan Mortgage Acquisition Corp., its agents, employees, directors, shareholders, and legal counsel are immediately enjoined and restrained, J.P. Morgan Mortgage Acquisition Corp. will proceed with a foreclosure sale of Plaintiff's property commonly known as 1867 Garnet Breeze Drive, Rosharon, Texas 77583 and Plaintiff will suffer an immediate and irreparable harm and will have no adequate remedies under the law, and  may commit the foregoing before notice and hearing on Plaintiff's Application for Temporary Injunction.

B.    Plaintiff will suffer an irreparable harm if J.P. Morgan Mortgage Acquisition Corp., its agents, employees, directors, shareholders, and legal counsel are not restrained immediately because Plaintiff will lose her fee simple title and ownership of his Property, which is Plaintiff's residence and homestead and is thus unique and irreplaceable, and there is no adequate remedy at law to grant Plaintiff complete, final, and equitable relief.

C.    Plaintiff has provided notice to J.P. Morgan Mortgage Acquisition Corp. informing them of the filing of Plaintiff's Application for Temporary Restraining Order prior to this Court conducting this hearing.

Copy from re:SearchTX

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED** that J.P. Morgan Mortgage Acquisition Corp., its agents, employees, directors, shareholders, and legal counsel are hereby ORDERED to immediately cease and desist from attempting or proceeding with any foreclosure sale of Plaintiff's property commonly known as 1867 Garnet Breeze Drive, Rosharon, Texas 77583. J.P. Morgan Mortgage Acquisition Corp., its agents, employees, directors, shareholders, and legal counsel are hereby immediately enjoined and restrained from the date of entry of this Order until fourteen (14) days hereafter, or until further ordered by this Court.

**IT IS FURTHER THEREFORE ORDERED, ADJUDGED, AND DECREED** that Plaintiff's Application for Temporary Injunction be heard on the _____day of February 2023 starting at _____ a.m./p.m. and that J.P. Morgan Mortgage Acquisition Corp. is commanded to appear at that time and show cause, if any, why a temporary injunction should not be issued against J.P. Morgan Mortgage Acquisition Corp.

The Clerk of the above-entitled court shall issue a notice of entry of a temporary restraining order in conformity with the law and the terms of this Order, to include a copy of this Order, upon the filing by Plaintiff of the bond hereinafter set.

This Order shall not be effective until Plaintiff deposits with the Brazoria County District Clerk a bond in the amount of $_____ in due conformity with applicable law.

SIGNED and ENTERED this the _____day of February 2023, at _____a.m./p.m.

_____
PRESIDING JUDGE

Copy from re:SearchTX

Cause No. 121454-CV

Jason Stell

v.

J.P. Morgan Mortgage Acquisition Corp.

In the 239th District Court of Brazoria County, Texas

### Certificate of Cash Bond

Jason Stell, Applicant in the above-styled and numbered cause, has applied for a Temporary Restraining Order and/or Temporary Injunction in the above referenced case.

WHEREAS, Applicant desires hereby to give bond as required by law in order that the Temporary Restraining Order and/or Temporary Injunction may issue;

THEREFORE, Applicant does hereby deposit in the registry of the District Clerk of Brazoria County, Texas, a cash bond in lieu of sureties in the amount of $100.00, conditioned that the Applicant will abide by the decisions which may be made in the above-styled and numbered cause, and that Applicant will pay all sums of money and costs that may be adjudged against Applicant if the Temporary Restraining Order and/or any subsequent Temporary Injunction shall be dissolved in whole or in part.

**FILED**
At 2:15 o'clock P M.

FEB 06 2023

Donna Starkey
Clerk of District Court Brazoria Co., Texas
BY_____DEPUTY

Signed this the 6th day of February, 2023.

_____
(Signature of Payor)

Robert C. Vilt
(Printed Name of Payor)

The following information will be used for the receipts:

Paid By: _____

Address: 5177 Richmond #1142

Houston TX 77056

Phone Number: 713.840.7570

Email: clay @ viltlaw.com

Driver's License/Bar Number: 00788586

| Approved: |
| --- |
| Cassandra Tigner, District Clerk |
| Brazoria County, Texas |
| By: _____ |
| Deputy Clerk |

Copy from re:SearchTX

Filed for Record
Cassandra C. Tigner, District Clerk
Brazoria County, Texas
121454-CV
Alyssa Cook, Deputy

CAUSE NO. _____ 121454-CV

| | | |
|---|---|---|
| JASON STELL | § | IN THE DISTRICT COURT OF |
| | § | |
| v. | § | BRAZORIA COUNTY, TEXAS |
| | § | |
| J.P. MORGAN MORTGAGE | § | |
| ACQUISITION CORP. | § | 239th JUDICIAL DISTRICT |

FILED
At 2:15 o'clock P M.

FEB 06 2023

Donna Starkey
Clerk of District Court Brazoria Co. Texas
BY_____DEPUTY

## TEMPORARY RESTRAINING ORDER

ON THIS DATE Plaintiff's Application for Temporary Restraining Order was heard and considered before this Court. Based upon the pleadings, exhibits, records, and documents filed by Plaintiff and presented to the Court, as well as the arguments of legal counsel at the hearing, IT CLEARLY APPEARS THAT:

A.      Unless J.P. Morgan Mortgage Acquisition Corp., its agents, employees, directors, shareholders, and legal counsel are immediately enjoined and restrained, J.P. Morgan Mortgage Acquisition Corp. will proceed with a foreclosure sale of Plaintiff's property commonly known as 1867 Garnet Breeze Drive, Rosharon, Texas 77583 and Plaintiff will suffer an immediate and irreparable harm and will have no adequate remedies under the law, and  may commit the foregoing before notice and hearing on Plaintiff's Application for Temporary Injunction.

B.      Plaintiff will suffer an irreparable harm if J.P. Morgan Mortgage Acquisition Corp., its agents, employees, directors, shareholders, and legal counsel are not restrained immediately because Plaintiff will lose her fee simple title and ownership of his Property, which is Plaintiff's residence and homestead and is thus unique and irreplaceable, and there is no adequate remedy at law to grant Plaintiff complete, final, and equitable relief.

C.      Plaintiff has provided notice to J.P. Morgan Mortgage Acquisition Corp. informing them of the filing of Plaintiff's Application for Temporary Restraining Order prior to this Court conducting this hearing.

Copy from re:SearchTX

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED** that J.P. Morgan Mortgage Acquisition Corp., its agents, employees, directors, shareholders, and legal counsel are hereby ORDERED to immediately cease and desist from attempting or proceeding with any foreclosure sale of Plaintiff's property commonly known as 1867 Garnet Breeze Drive, Rosharon, Texas 77583. J.P. Morgan Mortgage Acquisition Corp., its agents, employees, directors, shareholders, and legal counsel are hereby immediately enjoined and restrained from the date of entry of this Order until fourteen (14) days hereafter, or until further ordered by this Court.

**IT IS FURTHER THEREFORE ORDERED, ADJUDGED, AND DECREED** that Plaintiff's Application for Temporary Injunction be heard on the 17 day of February 2023 starting at 9:00 a.m./p.m. and that J.P. Morgan Mortgage Acquisition Corp. is commanded to appear at that time and show cause, if any, why a temporary injunction should not be issued against J.P. Morgan Mortgage Acquisition Corp.

The Clerk of the above-entitled court shall issue a notice of entry of a temporary restraining order in conformity with the law and the terms of this Order, to include a copy of this Order, upon the filing by Plaintiff of the bond hereinafter set.

This Order shall not be effective until Plaintiff deposits with the Brazoria County District Clerk a bond in the amount of $ 100. in due conformity with applicable law.

SIGNED and ENTERED this the 6th day of February 2023, at 2:04 a.m./p.m.

_____
PRESIDING JUDGE

Filed for Record
3/6/2023 7:31 PM
Cassandra C. Tigner, District Clerk
Brazoria County, Texas
121454-CV
Cathy Richard, Deputy

## CAUSE NO. 121454-CV

| | | |
|---|---|---|
| **JASON STELL,** | § | **IN THE DISTRICT COURT** |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **OF BRAZORIA COUNTY, TEXAS** |
| | § | |
| **JP MORGAN MORTGAGE** | § | |
| **ACQUISITION CORP.,** | § | |
| | § | |
| *Defendant.* | § | **239TH JUDICIAL DISTRICT** |

### DEFENDANT'S ORIGINAL ANSWER AND AFFIRMATIVE DEFENSES

Defendant JP Morgan Mortgage Acquisition Corp. ("JP Morgan") files its Original Answer and Affirmative Defenses to Plaintiff Jason Stell's Original Petition, Application for Injunctive Relief, and Request for Disclosures and would respectfully show as follows:

### I.
### GENERAL DENIAL

In accordance with Texas Rules of Civil Procedure 92, JP Morgan generally denies all of the claims as alleged by Plaintiff and respectfully prays that Plaintiff be required to prove his claims by a preponderance of the evidence or such higher standard as may be applicable.

### II.
### AFFIRMATIVE DEFENSES

1.    Some or all of Plaintiff's claims are barred by Plaintiffs' prior material breach of the operative contracts.

2.    Some or all of Plaintiff's claims are barred by the doctrine of unclean hands.

3.    Some or all of Plaintiff's claims are barred by the statute of frauds.

4.    Some or all of Plaintiff's claims are barred by the parol evidence rule.

5.    Some or all of Plaintiff's claims are barred by failure to perform all conditions precedent to recovery.

Copy from re:SearchTX

6.      Some or all of Plaintiffs' claims are barred by laches, waiver, and/or estoppel.

For these reasons, Defendant JP Morgan Mortgage Acquisition Corp. prays that Plaintiff

take nothing by this suit and for such other and further relief for which they may be entitled.

Respectfully submitted,



By:      /s/ Melissa Gutierrez Alonso
JON H. PATTERSON
Texas Bar No. 24077588
jpatterson@bradley.com
Bradley Arant Boult Cummings LLP
1819 Fifth Avenue North
Birmingham, Alabama 35203-2104
Telephone: (205) 521-8403
Fax:    (205) 488-6403

MELISSA GUTIERREZ ALONSO
Texas Bar No. 24087648
malonso@bradley.com
600 Travis Street, Suite 5600
Houston, Texas 77002
(713) 576-0300 Telephone
(713) 576-0301 Telecopier
*ATTORNEYS FOR DEFENDANTS*

4859-9551-8037.1

Copy from re:SearchTX

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 6th day of March 2023, pursuant to the Texas Rules of Civil Procedure, a copy of the above and foregoing was served as follows to the following counsel of record:

***Via E-mail:*** **clay@viltlaw.com**; **nicolas@viltlaw.com**

Robert C. Vilt

Vilt Law, PC

5177 Richmond Ave., Ste. 1142

Houston, Texas 77056

***Attorney for Plaintiff***

*/s/ Melissa Gutierrez Alonso*

Melissa Gutierrez Alonso

3

4859-9551-8037.1

Copy from re:SearchTX

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Angela Davis on behalf of Melissa Gutierrez
Bar No. 24087648
adavis@bradley.com
Envelope ID: 73395764
Status as of 3/8/2023 4:08 PM CST

Associated Case Party: J.P. Morgan Mortgage Acquisition Corp.

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Melissa Gutierrez Alonso | | malonso@bradley.com | 3/6/2023 7:31:47 PM | SENT |
| Angela Davis | | adavis@bradley.com | 3/6/2023 7:31:47 PM | SENT |
| Adaly Rendon | | adaly.rendon@bradley.com | 3/6/2023 7:31:47 PM | SENT |

Associated Case Party: Jason Stell

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Robert C. Vilt | 788586 | clay@viltlaw.com | 3/6/2023 7:31:47 PM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Nicolas Nicolas | | nicolas@viltlaw.com | 3/6/2023 7:31:47 PM | SENT |